EDWARD J. KELSEY, RESPONDENT, v. THE PFAUDLER PROCESS FERMENTATION COMPANY, APPELLANT.

*Application to examine books of a corporation — when a refusal by the company to allow such examination does not subject the company to the penalty imposed by section 25 of chapter 40 of 1848.*

This action was brought to recover the penalty imposed by section 25 of chapter 40 of 1848, for a refusal to exhibit to a stockholder the stock-book or ledger kept by a corporation. It appeared from the testimony of the plaintiff that on the 27th day of September, 1884, he, in company with his attorney, called at the defendant's office and asked to see the president; that the president, who was in an adjoining room, came in and the attorney asked him if they could see the stock-book and record-book of the company. He replied that Mr. Puffer had the key to the safe where they were locked up, and that he was out of town and that no one else knew the combination and could open the safe, and that Mr. Puffer would be back early Monday morning and that if they would come in then they could see the books. On Monday morning they did go in, found Mr. Puffer and saw the books.

*Held,* that the court erred in denying a motion for a nonsuit made upon the ground that no cause of action had been proved; that no refusal to exhibit the books or to allow the same to be inspected was shown.

APPEAL from a judgment in favor of the plaintiff, entered upon a verdict rendered at the Monroe Circuit.

*John Van Voorhis,* for the appellant.

*Theodore Bacon,* for the respondent.

HAIGHT, J.:

This action was brought to recover the penalty given by the statute for refusing to exhibit to a stockholder the stock-book or ledger kept by the company. The plaintiff was sworn as a witness in his own behalf upon the trial, and testified that on the 27th day of September, 1884, he, in company with John Barhite, his attorney, called at the defendant's office and asked to see Mr. Sargeant, the president; that Mr. Sargeant was in an adjoining room and came in, and Mr. Barhite asked him if they could see the stock-book and record-book of the company. Mr. Sargeant said that Mr. Puffer had the key to the safe where they were locked up and that he was out of town, and that no one else knew the combination and could

open the safe, and he thinks that Mr. Sargent told him that Puffer would be back early Monday morning, and if they would come in Monday morning they could see the books. On Monday morning they did go in, found Mr. Puffer, and the books were exhibited to them. Other evidence was given tending to show that this took place Saturday afternoon; that Mr. Puffer was the clerk having charge of the books, and that at that time he was in the city of New York. At the conclusion of the plaintiff's evidence the defendant's counsel asked for a nonsuit upon the ground that no cause of action had been proved. The motion was denied and exception taken. The statute under which this action was brought provides as follows: "It shall be the duty of the trustees of every such corporation or company to cause a book to be kept by the treasurer or clerk thereof, containing the names of all persons, alphabetically arranged, who are or shall within six years have been stockholders of such company, showing their places of residence, the number of shares of stock held by them respectively, and the time when they respectively became the owners of such shares, and the amount of stock actually paid in; which book shall, during the usual business hours of the day, on every day except Sunday and the fourth day of July, be open for the inspection of stockholders and creditors of the company and their personal representatives, at the office or principal place of business of such company in the county where its business operations shall be located; and any and every such stockholder, creditor or representative shall have the right to make extracts from such book; and no transfer of stock shall be valid for any purpose whatever, except to render the person to whom it shall be transferred liable for the debts of the company, according to the provisions of this act, until it shall have been entered therein as required by this section, by an entry showing to and from whom it was transferred; such book shall be presumptive evidence of the facts therein stated in favor of the plaintiff in any suit or proceedings against such company or against one or more stockholders. Every officer or agent of any such company, who shall neglect to make any proper entry in such book or shall refuse or neglect to exhibit the same or allow the same to be inspected and extracts taken therefrom as provided by this section, shall be guilty of a misdemeanor, and the company shall forfeit

and pay to the party injured a penalty of fifty dollars for every such neglect or refusal, and all the damages resulting therefrom." (Laws of 1848, chap. 40, § 25.)

The court, in submitting the case to the jury, assumed that there was a refusal to exhibit the books called for and only submitted the question as to whether a demand had been made and whether or not the plaintiff acquiesced in the request to wait until Monday, and if the jury found that the demand was made and the plaintiff did not consent to wait until Monday to see the books, that then he had the right to recover. If this construction of the statute is to be adhered to it would follow that the officer having charge of the books would be required to attend at the office on every day of the year except Sundays and the fourth day of July, including every public holiday, for the purpose of exhibiting the books in case they were called for. He could not lock the books up in the place provided for them to even attend the funeral of a member of his own family without incurring the risk of a conviction for a misdemeanor and subject his company to the liability for a penalty. It does not appear to us that any such strict construction should be given to the statute, but, on the contrary, that we should consider the object and purpose for which it was enacted and give effect to its spirit. It was evidently enacted for the purpose of affording protection to the stockholders and creditors of the company; its object was to give a liberal opportunity at all reasonable times to examine the books and to punish the person in charge who should willfully and intentionally deprive them of such examination. It appears that the company had provided a safe in which the books were kept. This was but a reasonable and proper precaution as a guard against burglars and fire. Mr. Puffer was the clerk who kept the books and had charge of them. He had the key and combination of the safe. If he was necessarily called away temporarily for a short time it does not appear to us that it would be unreasonable to request the plaintiff to wait until the morning of the next business day to see the books. To hold that the officer left in charge of the office under such circumstances should become liable to a conviction for a misdemeanor and the company to a penalty of fifty dollars, appears to us to be unreasonable and unjust. No evidence was given

tending to show that the books were not locked up in the safe, or that Mr. Sargeant had the key and combination so that he could produce the books. Had such evidence been given a different question would have been presented. As the evidence stands it appears to us that a nonsuit would have been proper.

Again, Mr. Barhite was sworn as a witness on behalf of the plaintiff and gave evidence as to the conversation that took place between him and Mr. Sargeant at the time he visited the office in company with the plaintiff and asked to see the books. After the plaintiff had rested, Mr. Markham was sworn as a witness on behalf of the defendant and testified that he was present in the office on the 27th day of September, 1884, at the time that plaintiff and Mr. Barhite called. He was then asked the question : " What did Mr. Barhite state ? " This was objected to by the plaintiff and the objection was sustained and exception taken. We are of the opinion that this ruling was erroneous. The plaintiff was permitted to prove the conversation that took place by Mr. Barhite himself, at the time of making the demand, and yet the defendant, by this ruling, was prohibited from giving evidence as to the conversation.

We are of the opinion that for the reasons before stated the judgment should be reversed, and a new trial ordered, with costs to abide the event.

SMITH, P. J., concurred ; BRADLEY, J., concurred in result.

Judgment reversed, and new trial ordered, costs to abide event.